UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ADAM L., | ) | Case No. 5:22-cv-01557-SP |
|     Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | ) ) ) | |
|     Defendant. | ) | |

## I.
## INTRODUCTION

On September 2, 2022, plaintiff Adam L. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). The parties have fully briefed the matter in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision: whether the administrative law judge ("ALJ") properly considered plaintiff's subjective testimony. Memorandum in

1  Support of Plaintiff's Complaint ("P. Mem.") at 2-9; *see* Defendant's Memorandum in
2  Support of Answer ("D. Mem.") at 1-9.
3        Having carefully studied the parties' memoranda, the Administrative Record
4  ("AR"), and the decision of the administrative law judge ("ALJ"), the court concludes
5  that, as detailed herein, the ALJ failed to properly consider plaintiff's testimony with
6  respect to his walking difficulties.  The court therefore remands this matter to the
7  Commissioner in accordance with the principles and instructions enunciated in this
8  Memorandum Opinion and Order.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

11        Plaintiff was 35 years on November 3, 2019, his alleged disability onset date.  AR
12  at 65.  Plaintiff obtained a GED and has past relevant work as an automobile detailer.
13  AR at 41, 57, 201.
14        On December 6, 2019, plaintiff filed an application for SSI due to nerve damage in
15  his back affecting his feet, a permanently broken right ring finger, degenerative arthritis
16  of the hands and knees, tendonitis of the left arm, depression with psychotic features,
17  anxiety, and high blood pressure.  AR at 65.  The application was denied initially and
18  upon reconsideration, after which plaintiff filed a request for a hearing.  AR at 90-100,
19  106.
20        On May 24, 2021, plaintiff, represented by counsel, appeared and testified at a
21  hearing before the ALJ.  AR at 34-64.  The ALJ also heard testimony from David A.
22  Rinehart, a vocational expert.  AR at 56-62.  On July 7, 2021, the ALJ denied plaintiff's
23  claim for benefits.  AR 15-28.
24        Applying the well-known five-step sequential evaluation process, the ALJ found,
25  at step one, that plaintiff had not engaged in substantial gainful activity since December
26  6, 2019, the application date.  AR at 17.
27        At step two, the ALJ found plaintiff suffered from the severe impairments of: mild
28  lumbar spondylosis; bilateral tibial neuropathy; Charcot-Marie-Tooth disease with motor

involvement; right ring finger proximal interphalangeal joint fracture with malunion; left lateral epicondylitis; and hammertoes. AR at 17-18.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. AR at 20.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff had the RFC to perform a light work as defined in 20 C.F.R. § 416.967(b) with the limitations that he: could stand and walk four hours in an eight-hour workday; could occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; could never push, pull, or operate foot controls with the bilateral lower extremities; could frequently balance; could frequently finger with the right upper extremity and handle with the left upper extremity; could not climb ladders, ropes, or scaffolds or work at unprotected heights; and could not engage in occupational driving that requires foot controls. *Id.*

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as an automobile detailer. AR at 26.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including electronics worker, officer helper, and small products assembler. AR at 27. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. AR at 28.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied. AR at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-7 (9th Cir. 1989) (citations omitted). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id*. (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## **DISCUSSION**

Plaintiff contends the ALJ failed to properly consider his subjective testimony. P. Mem. at 2-9. Specifically, plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting his testimony about his hands and failed to specifically address his testimony concerning his walking, impaired concentration, and paranoia. *Id*. at 7-9.

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms.[2] In adopting SSR 16-3p, the Social Security Administration sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (citing *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if plaintiff satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.*

In assessing intensity and persistence, the ALJ may consider: the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms.  *Id.* (citing 20 C.F.R. § 416.929); SSR 16-3p at *4; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so.  *Smolen*, 80 F.3d at 1283-84.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause at least some of the symptoms alleged.  AR at 24.  At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony.  The ALJ discounted plaintiff's testimony because: (1) his complaints of arthritis pain and functioning in his hands were inconsistent with the frequency and extent of medical treatment; (2) plaintiff failed to follow the prescribed treatment for his ring finger; (3) plaintiff's mental symptoms were inconsistent with the objective medical evidence; and (4) medication controlled plaintiff's mental symptoms.  AR at 24-25.

In Function Reports dated February 15, 2020,[3] plaintiff stated he could not stand without pain, could not lift heavy objects, was unfocused, and had trouble with personal care.  AR at 211-12, 221-22.  Plaintiff stated he could barely lift 50 pounds, could walk 50 yards before needing to rest, could pay attention for five to ten minutes, and was always paranoid someone was watching him.  AR at 216, 226-27.  Regarding his activities, plaintiff reported he watered plants, defrosted food, fed animals, performed household chores, and did light yardwork for about four to five hours a day.  AR at 212-

---

[3] The ALJ did not summarize plaintiff's Function Reports in the decision.

13, 222-23. Plaintiff stated he could shop, engaged in "light" weightlifting, played the X-box, and got along with everyone. AR at 214, 222, 224-25, 227.

At the hearing, plaintiff testified his "arthritis appeared" in 2018 and he finally saw a rheumatologist in 2021 because it got worse. AR at 47-48. Plaintiff acknowledged the rheumatologist had not yet diagnosed him with arthritis. AR at 49. Plaintiff testified that he injured his ring finger in 2011 but did not seek treatment because he did not have insurance. *Id.* When he sought treatment in 2016, the physician told him there was nothing that could be done except for a fusion and he "wanted to deal with the pinky." AR at 50. Because his finger was already fused and the physician wanted "to deal with the pinky," plaintiff decided against the surgery. *Id*. With respect to his mental symptoms, plaintiff testified he gets really exhausted due to his depression, it has been like that since he was four or five years old, his mind is always wandering, he gets paranoid that people are talking about him, and Cymbalta "helps somewhat." AR at 50-51, 55. Plaintiff testified he likes to work with a group. AR at 55. On a typical day, Plaintiff engages in personal care, cooks on a hotplate, and watches DVDs. AR at 52-53. Plaintiff also drives to the casino or gas station once or twice a week. AR at 40. Plaintiff testified he can only walk a few feet before he needs to rest but does not use an assistive device because it will hurt his hands. AR at 53. Regarding his feet, plaintiff has "always been falling," unbalanced, and uncoordinated. AR at 54. As for his wrists and hands, plaintiff stated he drops things, including pans, and does not pick up anything heavy. AR at 55.

A. **The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Testimony Concerning His Hands and Mental Health**

The ALJ's first reason for discounting plaintiff's testimony was his subjective symptoms about his hand pain and functioning were inconsistent with the frequency and extent of medical treatment.[4] AR at 24; *see Pearson v. Kijakazi*, 2022 WL 1125632, at

---

[4] At step two, the ALJ concluded plaintiff did not suffer the medically determinable impairment of rheumatoid arthritis. AR at 19-20; *see* AR at 422.

*2 (9th Cir. Apr. 15, 2022) (the failure to seek treatment for an extended period is a clear and convincing reasons for discounting symptom testimony); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (the unexplained failure to seek treatment is a basis for discounting plaintiff's symptoms). Specifically, the ALJ noted plaintiff complained his worsening arthritic hand pain since 2018 had ultimately prevented him from working, but plaintiff failed to seek treatment from a rheumatologist until January 2021. AR at 24; *see* AR at 47-48, 422. Plaintiff did not explain why he did not seek treatment earlier. Although plaintiff now asserts he did not seek treatment for his hands because he did not have insurance, plaintiff was able to seek treatment for other symptoms and impairments from the alleged November 2019 onset date through January 2021. *See generally* AR 291-405. The ALJ therefore reasonably determined that plaintiff's treatment history was inconsistent with the alleged debilitating pain.

The ALJ's second reason for discounting plaintiff's testimony was he failed to follow the prescribed treatment for his right ring finger. AR at 24; *see Tommasetti*, 533 F.3d at 1039 (an ALJ may discount testimony for failure to follow a prescribed treatment). Plaintiff testified that he did not seek treatment for his right ring finger when he dislocated it in 2011 due to a lack of insurance. AR at 49; *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (failure to seek treatment may be a basis to discount subjective testimony unless there was a good reason for not doing so). When plaintiff finally sought treatment for his finger in December 2016, the physician recommended a right ring finger PIP joint fusion, but plaintiff never underwent the surgery.[5] AR at 24; *see* AR at 407. Plaintiff testified that the physician told him there was nothing that could be done except for a fusion and his finger was already fused, and the physician wanted to treat his pinky.

---

Nevertheless, the ALJ properly considered plaintiff's complaints of hand pain in assessing his RFC. *See* 20 C.F.R. § 416.945(a)(2).

[5] Plaintiff's testimony implies he was unable to see a doctor regarding his ring finger until December 2016. *See* AR at 49-50. But at the December 2016 visit, the examining physician stated plaintiff had tried conservative measures. *See* AR at 407.

8

AR at 50. But plaintiff's explanation is inadequate because the record clearly reflects that his finger was dislocated and not fused, and the physician recommended fusion surgery in the right ring finger. AR at 407. Moreover, in discussing plaintiff's testimony regarding his finger, the ALJ also noted that plaintiff's statements concerning the physician's recommendations were inconsistent with the record. AR at 24; *see Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022) (ALJ properly discounted plaintiff's pain testimony by citing to inconsistencies with the record).

Third, the ALJ discounted the severity of plaintiff's mental health statements because they were inconsistent with the objective medical evidence.[6] AR at 25; *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medical evidence may be one factor in evaluating testimony). The ALJ noted that although plaintiff was diagnosed with major depressive disorder and he testified his depression caused him to be exhausted, his mental status examination findings were unremarkable, including normal mood, appropriate affect, normal concentration, intact judgment, and intact thought process. AR at 19, 25; *see* AR at 301, 382, 434, 436, 437, 439, 440. The record supports the ALJ's conclusion.

Finally, the ALJ rejected the severity of plaintiff's mental health symptoms because plaintiff reported doing well with the medication, Cymbalta. AR at 19, 25; *see Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). Again, the record supports the ALJ's finding that plaintiff's mental health symptoms were controlled with medication. Plaintiff consistently reported doing well on his medication and had unremarkable objective findings during his mental status examinations. *See* AR 434, 436, 439, 440; *see also* AR at 301, 382, 434, 436, 437, 439, 440.

---

[6] At step two, the ALJ found that plaintiff's depression and anxiety did not cause more than minimal limitations and were therefore non-severe. AR at 19.

Thus, the ALJ cited clear and convincing reasons supported by substantial evidence for rejecting plaintiff's subjective testimony concerning his hands and mental health.

**B.** **The ALJ Failed to Consider Plaintiff's Testimony Concerning His Walking Limitations**

Unlike plaintiff's testimony concerning his hands and mental health, the ALJ did not provide clear and convincing reasons for discounting plaintiff's walking limitations. Plaintiff testified he could only walk a few feet before needing to rest, but the ALJ determined he had the RFC to stand and walk four hours in an eight-hour workday without providing any reasons for rejecting his testimony. AR at 20, 53.

The ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (as amended). Contrary to defendant's assertion, the ALJ only discussed plaintiff's hands and mental health testimony in her subjective symptom evaluation. Defendant argues the ALJ determined plaintiff's subjective complaints about walking difficulties were inconsistent with the record, and cites to the portion of the decision in which the ALJ noted that plaintiff testified he did not use an assistive device for walking and could only walk a few feet before he needed to rest. D. Mem. at 6-7; *see* AR at 21. In fact, although the ALJ acknowledged these statements in her summary of plaintiff's testimony, the ALJ never found these statements inconsistent with the record, nor did the ALJ state she found inconsistencies between plaintiff's alleged walking limitations and his failure to use an assistive device. This makes sense since plaintiff explained he did not use an assistive device because doing so hurts his hands. *See* AR at 53. And indeed, in setting forth why she did not find the state agency physicians' administrative findings fully persuasive, the ALJ stated that plaintiff's testimony about his difficulty walking without pain was "at least somewhat consistent with his medical history." AR at 26. Although the court must look at the entire decision for the ALJ's reasoning, here it would be a reach to conclude

the ALJ addressed and discounted plaintiff's testimony regarding his walking.[7] *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (the court must look at the ALJ's explanation in "all of the pages" of the decision).

Accordingly, the ALJ provided clear and convincing reasons for discounting plaintiff's testimony concerning his hand pain and mental health symptoms, but failed to state clear and convincing reasons for discounting plaintiff's testimony concerning his difficulty walking.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Typically, in accordance with the "ordinary remand rule," the reviewing court will remand to the Commissioner for additional investigation or explanation upon finding error by the ALJ. *Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014). Nonetheless, it is appropriate for the court to exercise its discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate.

---

[7] In her summary of the medical evidence, the ALJ mentioned plaintiff's failure to complete physical therapy for his leg pain, but the ALJ does not cite it as a basis for discounting plaintiff's walking difficulties. AR at 23.

11

*Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, there is an outstanding issue to be resolved and remand is required. On remand, the ALJ shall reconsider plaintiff's testimony regarding his difficulties with walking, and either credit his subjective complaints or provide clear and convincing reasons for rejecting them. The ALJ shall then redetermine which impairments are severe, reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

Dated: September 25, 2023

SHERI PYM
United States Magistrate Judge